No. 34,379

THE CITIZENS SAVINGS & LOAN ASSOCIATION, *Appellant,* v. JOE WARSON, *Appellee.*

(94 P. 2d 311)

Opinion filed October 7, 1939.

*Frank L. Bates, Donald C. Little* and *Robert G. Lindsay,* all of Kansas City, for the appellant.

*Justus N. Baird* and *Elmer E. Martin,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

HOCH, J.: This was an action to foreclose a real-estate mortgage. The defendant, who had bought the property subject to the mortgage, had made all the payments specifically provided for by the mortgage. The plaintiff refused to release the lien on the ground that the provisions for payment stated in the mortgage were in error and that the defendant was liable for additional payments called for by the note referred to in general terms in the mortgage. The defendant filed a cross petition for damages, under the statute, for refusal to release the mortgage. Defendant prevailed, and plaintiff appeals.

Two questions are presented. The first is whether, under the facts and circumstances hereinafter stated, the purchaser was liable for the additional payments called for by the note. The second is whether, as a matter of law, the verdict and judgment against the plaintiff for refusal to release the mortgage should be set aside.

We also have before us a motion by the appellee to dismiss the appeal on the ground that the appellant has not had transcribed and brought here for review enough of the evidence to enable this court to pass upon the questions presented. Appellant says that the abstract is adequate for determination of the questions of law which it desires to present. The fact that the appellant has not furnished more of the record is not in itself sufficient ground for dismissing the appeal. On the record submitted we have reached the conclusions hereinafter stated, and the motion to dismiss the appeal has been denied.

The judgment sought against appellee Warson was solely one in rem. He was not involved when the original indebtedness was incurred and had nothing to do with the note which was secured by the mortgage. He was a subsequent purchaser, taking title subject to the mortgage. The debt had been incurred by Albert Anderson and wife, who were the owners of lot 13, block 1, Kenwood, an addition to Kansas City, Kan. On August 6, 1925, they borrowed $2,750 from the plaintiff, the Citizens Savings & Loan Association, hereinafter called the association, to be used in building a house on the lot, and gave their note for that amount, secured by a mortgage upon the property. The contract note was given to cover subscription for 27½ shares of stock in accordance with the association's usual plan of operation. After recital that it was executed to secure the payment of $2,750 with interest and such charges as might come due under the terms of the contract note, the mortgage provided as follows:

". . . which said interest and dues on said shares the first parties agree to pay in monthly installments, making a total monthly payment of $34.38 payable as follows: Thirty-four and 38/100 dollars on or before the 6th day of August, 1925, and a like sum on or before the 6th day of each and every month thereafter to and including the month of January, 1934."

Subsequent to the recording of the mortgage the appellee, Joe Warson, negotiated with the Andersons for purchase of the property. Before completing the deal he secured an abstract of title, had it examined by a reputable and experienced attorney, who confirmed the representations of the Andersons and reported that the title was good, subject only to a mortgage of $2,750, which was payable in 102 monthly installments of $34.38, ending in January, 1934. On October 20, 1925, he made a cash payment and took title from the Andersons, who warranted the property to be free from all encumbrances except the mortgage. Two payments had been made by the Andersons, and from then on Warson made every monthly payment regularly, including the last one in January, 1934. The association refused, however, to make record release of the mortgage. They advised him that they had discovered that a mistake had been made by their scrivener at the time the mortgage was executed and that it was not in accordance with the terms of the note which it secured. They said that instead of calling for 102 monthly payments of $34.38, ending in January, 1934, the note called for 138 payments of that amount, ending in January, 1937. They explained

that when negotiations for the loan were begun the Andersons desired to pay off the loan at the rate of $41.25 a month, including principal and interest, and that this would call for approximately 102 monthly payments, the last one being in January, 1934, but that before arrangements were completed the Andersons asked to have the monthly payments reduced, and that agreement was then made for monthly payments of $34.38, which would mature the debt in approximately 138 months, the last payment being in January, 1937. They said that the note was made out according to the new arrangement, but that the scrivener by mistake wrote up the mortgage to mature the payments in 102 months, ending in January, 1934.

Warson contended that he had fully discharged the debt which he assumed. The foreclosure action was begun in July, 1934. The case, which did not come to trial until January, 1939, was tried before a jury, which brought in a general verdict for defendant Warson and assessed damages in his favor for $100 for refusal of the association to release the mortgage and for $400 for attorney's fees.

Although the trial of the case consumed several days, practically none of the testimony has been brought here for our examination. We have only the pleadings and motions made in the case, copies of the note and mortgage, opening statement for the defendant, certain correspondence dealing with the legal services performed by defendant's attorney, the instructions asked by the plaintiff, the instructions given, the general verdict and the jury's answers to special questions.

Appellant concedes that questions of fact were tried out, and that while there was conflicting testimony, the jury's findings of fact are not open to attack. It contends that as a matter of law Warson was bound to make payments for 138 months as provided for in the note signed by the Andersons, even though the terms of the note did not appear in the mortgage and were in fact contrary to the terms therein set forth. It seems to be appellant's view that the jury's findings of fact relative to representations which it made to appellee may be disregarded in determining the question of law presented. With that view we cannot agree. In its answers to special questions the jury found that Warson's allegations as to representations made to him by officers of the association, both before and after he bought the property, were true. We need not, there-

fore, here determine whether Warson would be liable for payments called for by the note, and not appearing in the mortgage, if he had made no inquiry about the matter and had received no representations about it from the association, and had relied solely upon what appeared upon the face of the mortgage. The jury's findings of fact cannot be disregarded.

The jury found that:

1. Warson understood and believed when he bought the property in 1925 that 102 monthly payments of $34.38 from August, 1925, to January, 1934, would satisfy plaintiff's lien upon the property.

2. Warson's understanding and belief were induced by (a) the written opinion of the attorney who examined the title and construed the mortgage, (b) statements and conduct of officers of the association confirming the attorney's written opinion, (c) statements of the plaintiff's secretary and treasurer or either of them that payment provided in the mortgage would liquidate the lien.

3. That the association, through its secretary and treasurer or either of them, know or had reason to know, at or before the time Warson bought the property, that he was buying it in the belief that payments of $34.38 a month, to January, 1934, would retire plaintiff's lien.

4. That the plaintiff did not notify Warson at the time he was making the purchase that it claimed any lien different from that described in the written opinion given by the attorney.

5. That on three different occasions the plaintiff informed Warson that the monthly payments to January, 1934, would discharge the lien, namely, (a) when the deed was made from the Andersons to Warson, (b) when Warson wanted to borrow money from another source and pay off the plaintiff, (c) when Warson was considering a loan for purchase of a farm.

6. That Warson used reasonable diligence in ascertaining the extent of plaintiff's lien.

7. That the plaintiff was interested in whether Warson bought the property from the Andersons.

The jury also found that the plaintiff did not intentionally deceive Warson as to when the mortgage would be paid out and would not have profited by deceiving him in the matter, but upon motion of the defendant these answers were set aside by the trial court. While the plaintiff's motion for a new trial alleged, *inter alia,* "erroneous rulings of the court," there is nothing in the record be-

fore us to indicate that the plaintiff called the court's special attention, as alleged error, to the striking out of these particular answers.

There was nothing upon the face of the mortgage to indicate that the terms therein set out might be in error and that the note, referred to, might carry different terms. It is urged that it was incumbent upon the prospective purchaser to make inquiry. The answer is that he did so. The association had possession of the note. Before he bought the property, and twice afterwards upon occasions involving his course of action, he made inquiry at the office of the association and was informed that the payments set forth in the mortgage would discharge the lien. For eight and a half years he made his monthly payments regularly, and in January, 1934, a total payment to the association of $3,506.76 was completed, which included the principal of $2,750 and interest at approximately seven percent. Under these facts the equitable rule of estoppel clearly applies and the defendant was entitled to discharge of the lien. (21 C. J. 1113, 1135, 1146; 10 R. C. L. 689; *Westerman v. Corder*, 86 Kan. 239, 119 Pac. 868; *Continental Bank v. Kowalsky*, 247 Mich. 348, 225 N. W. 496; *Fulton B. & L. Asso. v. Greenlea*, 103 Ga. 376, 29 S. E. 932.)

We have examined all of the cases cited by appellant and find none of them inconsistent with the conclusion that by its representations to the defendant the plaintiff is estopped from demanding payments in addition to those set out in the mortgage. For instance, among the cases cited is *Middlekauff v. Bell*, 111 Kan. 206, 207 Pac. 184. In that case a bank held a note and mortgage which it assigned to Middlekauff, who delayed recording the assignment. Subsequently a third person accepted a mortgage on the same property on the alleged representations of the bank that the first mortgage had been paid. In spite of the fact that she had delayed putting the assignment of record the assignee of the first mortgage prevailed as against the holder of the second mortgage. The case is clearly distinguishable from the one we have here. The second mortgagee, in order to protect himself, should have insisted upon record release of the former mortgage before making the loan. He took no action upon any representations made to him by the holder of the first mortgage.

Appellant devotes much of its argument to the proposition that the note and the mortgage must be construed together as one instrument. Appellant admits that the terms of the two instruments are

inconsistent and contends that those of the mortgage were in error. If this action were between the original parties to the note and mortgage appellant's contention would be more in point. It does not disturb the estoppel established by the facts, as between the association and Warson, who had nothing to do with the execution of the note and as far as the record discloses never saw it.

The second question is whether the defendant was entitled to statutory damages for plantiff's refusal to release the mortgage. In his cross petition the defendant sought recovery under the provisions of G. S. 1935, 67-309, which makes a mortgagee liable in the sum of $100, together with reasonable attorney's fee, for failure or refusal to release a mortgage of record when it has been paid. The jury awarded the statutory damages of $100, and $400 for attorney's fee. Appellant contends that even though it be held that Warson was entitled to release of the mortgage, it is not liable in damages under the statute, because a question of law was involved which it was entitled to litigate. It says that the statute cannot properly be invoked where there is ground for honest and reasonable doubt as to the rights of the contending parties. On this question, as on the first one heretofore discussed, it again appears that appellant would outline the controversy without regard to the jury's findings of fact. What was the controversy? What was the question of law involved in the controverted right of Warson to a release of the mortgage? Appellant says, in effect, that the question it was entitled to litigate was simply whether a purchaser of property subject to a mortgage is bound by the terms of the note referred to in the mortgage. The appellee says that the controversy was whether he was so bound in the face of the representations made to him by officers of the association. It is true that appellant denied that the representations were made, but the jury found otherwise. In other words, the jury said that the controversy was what the appellee says it was. We cannot, therefore, decide whether the association had reasonable grounds to believe that the defendant had not discharged his obligation without taking into account the jury's findings of fact. Having represented to Warson before he made the purchase that the terms stated in the mortgage would discharge the lien, and having advised him to the same effect on two subsequent and consequential occasions, can the association then say that there was reasonable doubt as to whether he was entitled to release of the mortgage? Assuming that these representations were made in good faith after examina-

tion of the mortgage, whose terms may have been mistakenly written by the scrivener, the fact remains, as found by the jury, that the representations were made and relied upon.

Moreover, it must again be noted that appellant has not brought the testimony here for our review. What aggravating circumstances, if any, may have been shown by the testimony, we cannot say. We do have, however, the allegations made in defendant's answer and cross petition, not only that the plaintiff refused to release the mortgage, but that thereafter it "went upon the defendant's property and falsely and fraudulently stated and represented to the tenant of these defendants that said mortgage was unpaid and in default and that plaintiff held an assignment of the rent executed by these defendants and by said false statements induced said tenants to pay to the plaintiff the sum of twenty-five dollars ($25) as rent. That these defendants were required to employ counsel and bring suit against the plaintiff to recover said sum, etc." We do not know what, if any, evidence was produced to support this allegation, or whether any other conduct was shown indicating willful disregard of defendant's rights in refusing to enter the release.

Appellant cites the recent case of *Stumph v. Wheat Belt B. & L. Ass'n,* 148 Kan. 25, 79 Pac. 896, which followed *Parkhurst v. National Bank,* 53 Kan. 136, 35 Pac. 1116. Our holding here is in nowise contrary to those decisions. In *Stumph v. Wheat Belt B. & L. Ass'n,* supra, it was held that the question of whether the appellee was entitled to statutory damages and attorney's fee depended in a large part upon there being a bona fide controversy between the parties and that an ultimate finding against the appellant did not necessarily mean that its claim had not been made in good faith. The case involved no material representations made and relied upon by the opposing party. Likewise, *Parkhurst v. National Bank,* supra, simply held that if the mortgagee in good faith believes the mortgage is not paid he is not liable for the penalty. In that case no representations by the mortgagee, giving rise to estoppel, were involved. In the instant case, with its findings of fact by the jury, and the full testimony undisclosed, we cannot say that there was not sufficient evidence to support the award under the statute. (*Van Doren v. Etchen,* 112 Kan. 380, 211 Pac. 144; *Mathews v. Ins. Co.,* 113 Kan. 1, 213 Pac. 157.)

The judgment is affirmed.